ENTERPRISE MANUF'G Co., PENNSYLVANIA, *v.* SARGENT and others.[1]

*(Circuit Court, D. Connecticut. 1886.)*

1. PATENTS FOR INVENTIONS—COMBINATIONS OF OLD DEVICES.
   A new combination of old parts, for attaining an object, may sometimes, and perhaps often, be so obvious as to merit no title to invention.

2. SAME—INVENTION—NOVELTY AND UTILITY.
   While, in ordinary cases of new combinations of old parts for attaining an object, novelty and utility are evidence of invention, there should be other evidence to show that it exists.

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

3. SAME—INVENTION—EVIDENCE OF.

    Evidence of invention, in addition to novelty and utility, may often be found in the machine itself, which shows that it came from a creative mind, or the necessary evidence may sometimes be found in the history of the invention.

4. SAME—INVENTION—RESULT AS EVIDENCE OF.

    In this case the patentee accomplished a new and beneficial result, by means which others had been near to, and apparently wanted to find, but did not see. *Held*, that he was entitled to be styled an inventor.

5. SAME—No. 271,398—MACHINE FOR MINCING MEAT.

    The first and second claims of letters patent No. 271,398, of January 30, 1883, to John G. Baker, for a machine for mincing meat, considered, and *held* not infringed by the defendant's machine, patented in reissue letters patent No. 10,717, of April 17, 1886, to John H. Shaw.

*Charles Howson* and *Charles E. Mitchell*, for plaintiff.
*John K. Beach* and *B. F. Thurston*, for defendants.

SHIPMAN, J. This is a motion for a preliminary injunction to restrain the defendants from the alleged infringement of letters patent No. 271,398, dated January 30, 1883, to John G. Baker, assignor, to the plaintiff, for a machine for mincing meat and other plastic or yielding substances. The question, so far as the first and second claims are concerned, are, (1) in view of the undisputed state of the art, that of invention; and (2) that of infringement.

The meat-cutter described in the United States patent to Purches Miles, of July 13, 1864, and in the English patent for the same invention to Joseph Donnell, of September 23, 1865, was a hollow cylinder, into which, at one end, the uncut material was fed, a perforated plate at the other end, a rotating knife within the casing, with its cutting edges against the inner face of the perforated plate, and stationary and moving cutting knives arranged, near the hopper, into which the machine was fed, around a revolving shaft, which connected the hopper with the plate, and, by the aid of a spiral wing, fed the material to the plate. The cutting knives upon the shaft did the principal cutting work before the plate was reached. The meat-cutter of Hubert Dollman's English patent of 1881, the candy-cutter of E. Belling's United States patent of 1859, and the soft-dough machine of H. Dusch's United States patent of 1878, had a hollow cylinder, a revolving screw, a perforated plate, and a rotating knife outside the plate.

These two systems substantially comprised the state of the art at the date of the Baker patent, for it is not necessary to dwell upon the United States patent to G. A. Coffman, of February 28, 1845, for a meat-cutter which consisted of a hollow case, a series of chopping cutters, a propeller wheel, a perforated plate, and a knife on the outside of the plate, thus having the Miles cutters upon the shaft inside the case, and the Dollman knife outside the plate. A Miles machine, known as the "Challenge," has, in addition to its cutting knives around the shaft, two rotating knives, one outside and the other inside the plate. The Baker device dispensed with the cutters

around the shaft, and relied for its cutting mechanism upon a rotating knife on the inside of the perforated plate. The substantial portions of the machine are a hollow casing, a perforated plate near the end of the casing, a rotating knife acting against the inner face of the plate, a forcing screw, the continuous thread of which extends to or nearly to the knife, and which rotated with the latter. The interior of the casing, in all of the drawings except one, and in the exhibits, is corrugated by longitudinal grooves, each of which is inclined on one side, and presents an abrupt retaining shoulder on the other. These corrugations do not extend to the outer end of the casing.

The first and second claims are as follows:

"(1) The combination, in a machine for cutting up plastic or yielding substances, of the following instrumentalities, namely: *First*, a casing for containing the substances to be cut up; *second*, a perforated plate at or near the end of the casing; *third*, a device for forcing the crude mass forward in the casing, and against the said plate, without otherwise disturbing the integrity of the said mass; and, *fourth*, a knife operating against the inner face of the plate, and serving as the sole means, in connection with the said plate, of cutting up the mass, by severing therefrom the portions which enter the perforations,—all substantially as set forth.

"(2) The combination of a casing, E, having, at or near one end, a perforated plate, a rotating knife, acting against the inner face of the said plate, and a forcing-screw, the continuous thread of which extends to, or nearly to, the knife, and which rotates with the latter, substantially as specified."

The cutter is an actual and a commercial success. It is far simpler than the Miles cutter, being composed of a much less number of parts, and is more easily taken care of and cleaned. That it is a patentable invention, as an improvement upon the Miles or Coffman machines, seems obvious. To discard the stationary and revolving knives of Miles, and to rely upon the screw, either with or without the corrugating shoulders, to force the material along and upon the knife inside the perforated plate, to cut it, and thus to make a cheaper, simpler, and more easily cared-for machine, was the work of an inventor.

It is urged that the patentee, in his specification, makes a marked distinction between his screw and the Miles screw and cutters, in that his screw simply imparts pressure to the uncut material, during its progress to the plate, without any other action, and forces the mass along "without otherwise disturbing" its integrity, whereas the defendant says it does cut or disintegrate the meat, and thus the screw and shoulders are only a substitute for the knives and revolving shaft of Miles. The language of the patentee was used with reference to the cutting qualities of the Miles knives, as compared with the non-cutting qualities of the screw. The portions of the meat which are in contact with the shoulders are rubbed or ground or abraded, but it can probably be truly said that they are not cut, although I was somewhat surprised, upon trying some slight experiments with large pieces of meat, at the extent of the comminution which was the result.

The next question is whether it was an invention to put the rotating knife of the Dollman, Dusch, and Belling machines inside the perforated plate. It made the machine, as a meat-cutter, a success; for a meat-cutter with the knife outside the plate is worthless. By such a construction the plate would soon become clogged. The defendants, in this branch of the case, dwell upon the fact that the patentee says that his invention is not restricted to the cutting of meats, but may be used for candy, dough, or any other plastic material; and they urge that the position of the plate is a matter of judgment, and that it is to be placed according to the requirements of the material to be acted upon, and therefore that the change of position was not patentable. It is obvious, whether or not the invention could be applied to other substances, that the machine was for the mincing of meat and suet, and that, to make an effective meat-cutting machine, this combination had not been found by prior inventors, although they had been close to it.

A new combination of old parts, for attaining an object, may sometimes, and perhaps often, be so obvious "as to merit no title to invention;" and, in ordinary cases, while novelty and utility are evidence of inventive skill, there should be other evidence to show that it existed. This is often found in the machine, which itself shows that it came from a creative mind, or the necessary evidence may sometimes be found in the history of the invention. In this case, the machine is a simple one, but it is manifest that the inventor accomplished a new and beneficial result by means which other people had been near to, and apparently wanted to find, but failed to see. The skill of his predecessors did not produce the idea which was to make an efficient implement. Baker produced it, and is entitled to be styled an inventor.

The device of the defendants, which was patented to John H. Shaw by reissued letters patent No. 10,717, dated April 17, 1886, the original having been dated March 9, 1886, is, so far as the first two claims are concerned, the machine of the plaintiff, except that, instead of the longitudinal shoulders, the Shaw cutter has spiral ribs, "running towards the perforated plate, the inclination of thread being, by preference, about 45 deg., or considerably greater than the inclination of the spiral rib of the screw."

As has been said, the absence of cutting action before the knife is reached is a distinctive feature of the Baker cutter. The defendants say that their machine is especially adapted to cut the meat before it reaches the perforated plate, in consequence of the action upon it of the spiral ribs in conjunction with the blades of the screw. Without committing myself definitely to a conclusion, it seems to me that there is a shearing action upon the meat between the edges of the spiral ribs and the revolving screw-blade like that of a powerful, dull pair of shears. There is a difference between the defendants' two machines which are exhibits in the case, in respect to the sharpness

of the blades, but either machine, in my present opinion, cuts the meat before it reaches the rotating knife.

The first two claims contain the gist of the Baker invention. There is a question of fact in regard to each of the four minor claims which are said to be infringed. Inasmuch as the principal claims are not infringed, as at present advised, and as the patent is a comparatively recent one, which has never been adjudicated upon, I have not thought it advisable to examine carefully the minor questions, involving details of construction.

The motion is denied.