SHIPMAN, Circuit Judge.
The complainant brought its bill in equity before the circuit court for the district of Connecticut to restrain the defendants from the alleged infringement of claims 1, 4, and 5 of letters patent No. 271,398, granted on January 30, 1883, to John G-. Baker, for an improved machine for cutting up plastic substances; From the decree of the circuit court, which dismissed the bill (72 Fed. 262), the complainants appealed.
The claims which are in controversy are as follows:
“(1) The combination, in a machine for cutting up plastic or yielding substances, of the following instrumentalities, namely: First, a casing for containing the substances to be cut up; second, a perforated plate at or near the end of the casing; third, a device for forcing the crude mass forward in the casing and against the said plate, without otherwise disturbing the integrity of the said mass; and, fourth, a knife operating against the inner face of the plate, and serving as the sole means, in connection with the said plate, of cutting up the mass by severing therefrom the portions which enter the perforations, all substantially as set forth.”
“(4) The combination of the casing, E, made larger at its outer than at its inner end, with a perforated plate, a knife, and a feed-screw.
“(5) The combination of a easing, E, made larger at its outer than at its *538 inner end, with a perforated plate, a knife, and a feed-screw, the thread of which conforms with the said easing, as set forth.”
This patent was carefully considered, and the invention was fully described, by the circuit court for the district of Connecticut, in Manufacturing Co. v. Sargent, 28 Fed. 185, 34 Fed. 134, and the views therein expressed were approved by the circuit court of appeals for the Third circuit in Wanamaker v. Manufacturing Co., 3 C. C. A. 672, 53 Fed. 791. The first claim describes the patentable combination which constituted the distinctive features of the invention, and distinguished it from any of its predecessors in meat-chopping devices. The third element, as described in the specification, is simply a forcing screw; and the fourth element is a knife, which is the sole cutting means, in connection with the plate. It will thus be perceived that in the invention which was protected by the patent the forcing screw was not a cutting instrument, and interfered with the wholeness of the meat in no other manner than was incidental to its function of pressing the mass forward, while the cutting was solely performed by the knife when in connection with the plate. In order to point out the patentable character of the improvement, and to- distinguish it from previously existing machines, particularly the Purchase Miles patents of 1861 and 1864, the decision in the second Sargent Case, supra, said:
“The main object of the patentee was to construct a machine which should get rid of the supposed necessity of preliminary cutting or chopping knives, and rely for its cutting character entirely upon the plate and knife at the end of the casing. Thus the patentee said in his specification: ‘A perforated plate and a knife have be.en used in a cutting machine, but in combination with preliminary cutting or chopping knives, moving and stationary, acting independently of the plate, for mincing meat before it reaches the said plate in a minced condition, the plate and knife being in this case for the purpose of preventing the escape of large lumps which may have escaped the action of the preliminary chopping knives. In my invention, reliance for cutting up the substance is placed entirely on the plate and knife and a device for imparting direct pressure to a crude, uncut substance against the plate without any action on the substance during its passage to the plate, excepting that for effecting the desired pressure, the aim being to cut up the substance to uniform, or nearly uniform, sizes,—a result which cannot be attained when .there are-intervening choppers to cut the substance up to different sizes, large and small.’ But it does not follow that the patentee meant, or that his patent is to be fairly construed as meaning, that the meat was to come to the plate in a condition in which no rubbing, or no abrasion, or no disintegration had taken place. He simply meant that, in contrast with the Miles machine, there was no cutting action in his device; that no reliance was placed, for cutting up the meat, upon anything else than the plate and the knife; and that the mass was forced to the plate without any other disturbance of its integrity than was incident to the forcing process.”
The defendants’ device has a casing, a forcing screw, a rotating perforated plate, structurally integral with the screw, and stationary knives, structurally a part of the casing. The terminal walls of the grooves in the casing are the knives. As the edges of the threads of the screw near the perforated plate come in contact with the edges of the grooves in the casing, lengthwise and parallel incisions are made in the meat before the knives co-act with the perforated plate. These lengthwise incisions are about an inch from the point where the perforated plate begins its work, but they are manifestly *539 the result of a preliminary cutting operation. The circuit court found the facts of similarity and dissimilarity in the operation of the two machines as follows:
“Tlie practical operation of complainant’s and defendants’ machines showed that in each the screw independently forced the meat forward toward? the perforations under great pressure, and that in defendants’ machine there was a preliminary longitudinal cutting, amounting to a severance of the mass before the meat reached the perforations, which, if repeated, was sufficient to reduce the strips to hash, while in complainant’s machine the masses of meat were indented by the forcing ribs, hut were not ordinarily preliminarily severed.”
Under this state of facts, the question is whether the first claim is infringed. The complainant’s expert does not deny that “a number of slight incisions are made in the face of the mass of meat as it is forced forward against the perforated plate,” but he regards this action as purely incidental, and entirely immaterial to the essential operation of the machine. It is true that the cutting action is not extensive, hut the machine is so constructed that preliminary cutting-—-the action which Baker avoided—must necessarily take place. The distinctive feature of the Baker device is its abandonment of the preliminary cutting by the cutters around the shaft, and its reliance upon the knife on the inside of the perforated plate. When the defendants turned the terminal edges of the grooves in the casing into knives, which co-acted with the edge of the threads of the screw, they necessarily created a cutting of the meat before the plate was reached. As the device is constructed, cutting action by the stationary knives must commence before the meat reached the rotating plate, which is integral with the screw; and thereby the defendants place themselves outside of the territory occupied by claim 1 of the Baker patent. Inasmuch as the same preliminary noncutting characteristic of the invention must enter into the construction of claims á and 5, they also are not infringed. The decree of the circuit court is affirmed, with costs.