George O. GRAVES, d/b/a Michiana Mills, Plaintiff,

v.

KELL-DOT INDUSTRIES, INC., et al., Defendants.

No. 14152-2.

United States District Court
W. D. Missouri, W. D.

May 14, 1964.

Scofield, Kokjer, Scofield & Lowe, Kansas City, Mo., Hobbs & Easton, South Bend, Ind., for plaintiff.

Hovey, Schmidt, Johnson & Hovey, Kansas City, Mo., for defendants.

GIBSON, Chief Judge.

This is an action for patent infringement in which jurisdiction is based on §§ 1338(a) and 1400(b), Title 28 United States Code. Plaintiff's amended complaint alleges that his patent #2,842,072, is being infringed both equivalently and actually by defendants' food processing machine.

Plaintiff's patent describes a food processing machine for extruding and puffing cereal meal. The machine consists essentially of a housing with a bore therein, a rotatable member within the bore with a helical ridge on the periphery, a single extrusion die plate with a plurality of extrusion holes therein, each of the holes having a conical inlet connected to a cylindrical or elongate portion extending through the die plate, an annular flange on the periphery of the die plate with holes therein for securing the die plate to the housing, and a knife intermittently passing the outlet ends of the extrusion holes for cutting the extruded material in sections. The novelty of plaintiff's machine lies primarily in the employment of a single rather than a multiple headplate arrangement, which will prebake the cereal product.

The machine of defendants' is substantially the same as that described in plaintiff's patent, with the major deviation from plaintiff's machine being the design and configuration of the extrusion holes contained in the headplate. Where plaintiff's extrusion holes are essentially composed of a tapered inlet portion connected to a cylindrical or elongate portion, defendants' machine utilizes an extrusion hole which is tapered in its en-

144

tirety. This extrusion hole used by defendants produces a product which to the eye of the Court is identical to that produced by the plaintiff's machine.

Plaintiff contends that defendants' food processing machine infringes claims one through four both directly and equivalently, and infringes claim five directly. Defendants advance the defense that there is no infringement primarily for the reason that the difference in the design of the extrusion holes is a difference at the very point of the novelty of plaintiff's claimed invention.

The background out of which this action arose can be briefly outlined as follows:

In 1948, plaintiff entered business with his brother and Darwin F. Rosebrook in the manufacture of corn meal collets which when salted and coated with cheese are known by various trade names such as "Cheez Stix," "Cheezits," etc. At that time plaintiff and Rosebrook designed a food processing machine for the manufacture of collets. That machine employed a two stage extrusion process using a multiple headplate arrangement, and was the subject of patent number 2,705,927, known as the G & R patent and the Jacks patent. In 1952, a difference arose between plaintiff, his brother, and Rosebrook over the distribution of some royalties, and plaintiff terminated his services with his brother and Rosebrook, took one of the G & R machines, and pursuant to an oral agreement between plaintiff, his brother, and Rosebrook concerning the use of the G & R machine, went into business for himself.

In 1953, plaintiff's brother and Rosebrook were killed in an airplane crash, and thereafter some doubt arose as to plaintiff's right to use the machine covered by the G & R patent. In 1955, plaintiff changed his machine from a two stage dual headplate machine to one employing a two stage single headplate arrangement. In the forepart of 1956, plaintiff again changed his machine, this time to one employing a single stage single headplate, and in March 1956, plaintiff applied for a patent on that machine

which was granted in July 1958, and which is the patent here in suit. Machines produced under this patent have been in commercial operation since 1956, and at the present time, plaintiff has some 18 machines placed under leasing agreements.

Prior to 1960, one of the machines covered by the patent in suit here was in operation at Atlanta, Georgia, in the Filler Products Co. plant. Defendant Edwin F. Kelley was a production engineer at the Filler Products plant, and while there observed the machine in operation. Kelley also observed the plaintiff's machine in operation at the Clover Club Food Co. plant in Kaysville, Utah.

In 1960, Kelley participated in the formation of the defendant Kell-Dot company, and in 1961, under an agreement with defendant Manley, Kell-Dot moved into the premises occupied by Manley. The defendants there built and offered for sale a food processing machine which used a two stage dual headplate extrusion system. Upon the production of that machine the defendants were notified by the holders of the G & R patent that the machine constructed by defendants infringed the G & R patent. Defendants then notified the holders of the G & R patent that they intended to manufacture a machine using a single headplate extrusion system, and the G & R patent holders informed defendants of the existence of plaintiff's patent. Defendants proceeded with the construction of machines using a single headplate and have continued to make and use single stage single headplate machines since 1961.

Assuming arguendo that plaintiff's patent is valid, the Court is of the opinion that defendants' machine does not directly infringe plaintiff's claims one through four, but that it does infringe those claims by equivalence. Although the configuration of the extrusion holes of defendants' headplates is different from the shape described in claims one through four, the defendants' machine produces the same product as that of the plaintiff, and produces it in substantially the same manner. Thus un-

der the test laid down in Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935 (1877), and followed in Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), that " * * * 'if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape.' ", it is clear that defendants' machine infringes claims one through four of plaintiff's patent by equivalence.

Plaintiff also contends that defendants' machine contributorily infringes plaintiff's patent because after defendants' machine has been in operation for a period of time the tapered extrusion holes become worn and their form changes from a hole tapered throughout its length to one tapered at its inlet and cylindrical at its outlet. In view of the finding of infringement by equivalency of claims one through four, it is not necessary to this memorandum to consider the question of contributory infringement.

Claim five of plaintiff's patent is in most respects similar to claims one through four, however, in claim five the extrusion holes are described as having " * * * an inlet portion tapering inwardly and an elongated portion connected to said tapered portion and extending through the plate to the outside surface thereof, * * *." This description differs from that set out in claims one through four which describes the extrusion holes as having " * * * an inlet portion tapering inwardly and a cylindrical portion connected to said tapered portion and extending through the plate to the outside surface thereof * * *." It is the substitution of an elongate portion for the cylindrical portion of claims one through four which forms the basis of plaintiff's claim of direct infringement of claim five. Defendants' headplates all utilize an extrusion hole which is tapered from the inlet portion all of the way through the plate. Defendants' position is that this use of an extrusion hole which is tapered through-

out its length is sufficient to prevent defendants' machine from infringing claim five of plaintiff's patent. The Court takes a contrary view. An extrusion hole which is tapered through its entire length, by necessity must have a tapered inlet portion and an elongate portion. The entire length of the hole cannot be the inlet. This tapered inlet portion and elongate portion are exactly what is described in claim five of plaintiff's patent, and therefore defendants' food processing machine directly infringes claim five of the patent in suit. Even if defendants' machine did not directly infringe the patent, it is clear that the machine uses substantially the same process as that claimed in the patent, produces the same product in substantially the same manner and that it, therefore, infringes claim five by equivalence.

■ Having determined, assuming that the patent is valid, that defendants' machine infringes all five claims of the patent in suit, the remaining issue is that of the validity of the patent. On the issue of validity the defendants bear the burden of showing that the patent is invalid and must overcome the presumption of validity which attaches to the issuance of a patent. Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983 (1937). Defendants advance several reasons in support of the contention that the patent is invalid. The first is that the language of the claims and of the specification is so indefinite that the metes and bounds of the claims cannot be determined, and the language of the specification is not sufficient to meet the requirements of § 112, Title 35 U.S.C. The Court is of the opinion that the language of the patent is sufficient to meet the requirement of § 112, and that the claims are set out in a manner which distinctly claim the subject matter of the invention.

■ Although the language used to describe the headplate in plaintiff's machine speaks of a headplate with substantial thickness and in that regard is indefinite, that language is qualified by the statement that the thickness of the plate

should be greater than the largest diameter of the largest extrusion hole. Further, it is set out that the total cross sectional area of the extrusion holes must be less than the cross sectional area of the bore in which the screw carrying the helical ridge rotates. The language of the patent while not set out with mathematical precision, does, in the estimation of this Court, set out the boundaries of the invention sufficiently to enable one skilled in the art to make and use it. As was stated in General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 369, 58 S.Ct. 899, 902, 82 L.Ed. 1402 (1938) "The limits of a patent must be known for the protection of the patentee, the encouragement of the inventive genius of others, and the assurance that the subject of the patent will be dedicated ultimately to the public." The Court is of the opinion that the patent in suit meets those standards and the standards of § 112, Title 35 U.S.C. and is therefore valid against a claim of insufficient description.

Defendants also contend that the patent involves only an old combination of components used in an old manner and is therefore not an invention, and that the use of a single headplate was obvious to one skilled in the art. The Court is in partial agreement with this in that all of the components of plaintiff's machine are components which were present in prior patented food processing machines with the exception of the single stage single headplate. The single stage single headplate used in plaintiff's machine takes the place of the multiple headplate arrangement used in earlier machines, and substantially simplifies the operation and cleaning of the food processing machine. Plaintiff's single headplate machine performs in one operation the extrusion and puffing which was originally done in two stages by a process of extruding the material and allowing it to expand slightly, and then re-extruding it through a second plate and allowing it to fully expand or puff.

■ It is a natural tendency in dealing with patents to substitute hindsight for foresight and by looking at the status of the invention at present determine that the invention is not invention, but is merely a use which was forecast by the prior art. This, to the Court's mind, is one of the reasons patents are presumed to be valid, and why doubts are resolved in favor of invention. While it might seem that the use of a single headplate would be obvious from the prior art, from the evidence adduced at the trial the Court is convinced that this was not the case, and that the employment of a single stage single headplate in a food processing machine constituted invention of that machine. Many inventions, in retrospect, appear obvious to those skilled and even those unskilled in the art, but were not actually obvious as inventions or novel improvements of a patentable type at the time of their conception, because if such were the case, a person could reasonably expect that such inventions would have been made or developed long before the patents were applied for and issued. In arriving at a decision of whether or not a particular item meets the test of invention, the Court must, within certain objective limits, decide the question subjectively, and as previously stated, the Court resolved the question in this case in favor of invention.

■ The Court is further of the opinion that the utilization of a single stage single headplate in plaintiff's machine embodies a new mode of operation, and whether the single headplate be deemed an omission of parts, a substitution or a combination, it is an invention. While it is true that the omission of a part, or the combination of old parts or the substitution of parts does not normally constitute invention, it is also clear that where the substitution or combination effects a useful change in the operation of the machine, then that substitution or combination is patentable as an invention. Enterprise Mfg. Co. v. Sargent, 28 F. 185 (C.C.E.D.Pa.1886); Lawther v. Hamilton, 124 U.S. 1, 8 S.Ct. 342, 31 L.Ed. 325 (1887); Keystone Mfg. Co. v. Adams, 151 U.S. 139, 142, 14 S.Ct. 295,

38 L.Ed. 103 (1894); Universal Incorporated v. Kay Mfg. Co., 301 F.2d 140 (4th Cir. 1962); Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523 (1923).

Defendants, in addition to the aforementioned grounds, advance the contentions that the patent in suit is invalid for the reasons that the subject matter of the patent was dedicated to the public, the machine in question was in public use more than one year prior to the date of the application for letters patent, and that new matter was inserted in the claims as a material limitation two years after the application was filed. It is clear from the evidence that the claims contained in the present patent are narrower than those in the claims disallowed and that they are therefore valid. The rejection of the original broader claims in favor of the narrower terms of the claims of the patent does not operate to dedicate the subject matter of the narrower claims to the public. It is not clear to the Court how the machine in question was allegedly put into public use more than one year prior to the application for letters patent nor has it been made apparent to the Court that new matter was inserted in the claims as a material limitation which would invalidate the patent. The Court is, therefore, of the opinion that the defendants have failed to sustain their burden of proof and that the presumption of validity of the patent has not been overcome.

From the record, the briefs, and the evidence before the Court, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court finds:

1. This Court has jurisdiction over the subject matter of this action and the parties thereto.

2. Patent number 2,842,072 and the claims stated therein are valid.

3. Plaintiff's single stage single headplate food processing machine was far superior to the prior multiple stage multiple headplate food processing machines, and the machine which is the subject of patent #2,842,072 employs a new mode of operation in the manufacture of corn collets.

4. The use of a single stage single headplate in a machine used for the production of corn collets constitutes invention.

5. Prior to the time plaintiff designed his single stage single headplate machine other attempts had been made to use a single headplate machine, but such attempts had been unsuccessful.

6. The machine covered by patent #2,842,072 has enjoyed commercial success and plaintiff now has some 18 machines placed under leasing agreements.

7. Defendant Edwin F. Kelley, prior to 1960, observed the Graves single stage single headplate machine in operation at the Clover Club Foods, Inc. plant in Kaysville, Utah, and also observed the Graves single stage single headplate machine in operation at the Filler Products Co. plant in Atlanta, Georgia.

8. Defendants Manley, Inc., Kell-Dot Industries Inc., and Edwin F. Kelley have through their joint efforts designed, manufactured, sold, and used, food processing machines which infringe plaintiff's patent #2,842,072.

9. The machines of the defendants perform the same operation and achieve the same result in substantially the same way as the machine described in patent #2,842,072 claims one through four, and therefore the machines of defendants infringe claims one through four of patent #2,842,072 by equivalency.

10. Claim five of patent #2,842,072 is directly infringed by defendants' machines since those machines employ a single headplate using an extrusion hole which has a tapered inlet portion and an elongate portion.

11. All of the defendants to this action are infringers of patent #2,842,072 and are jointly and severally liable for the damages resulting from the infringement and for the costs of this suit.

12. Plaintiff is entitled to a permanent injunction against defendants for infringement of patent #2,842,072 and to an accounting for compensatory damages, but is not entitled to an award of attorneys' fees.

Judgment accordingly on the issue of validity and infringement, jurisdiction retained on issue of damages. Judgment will be settled before the Clerk on the usual notice.