**SKEE–TRAINER, INC., and Stewart J. Leonard, Appellants,**

v.

**GARELICK MFG. CO., Appellee.**

**No. 18067.**

United States Court of Appeals
Eighth Circuit.

June 8, 1966.

---

896

Marcus B. Finnegan, of Finnegan & Henderson, Washington, D. C., Warren A. Sturm, of Carlsen, Carlsen & Sturm, Minneapolis, Minn., on the brief, for appellant.

Mark W. Gehan, C. H. Lauder, St. Paul, Minn., on the brief, for apellee.

Before VAN OOSTERHOUT and MEHAFFY, Circuit Judges, and VAN PELT, District Judge.

VAN PELT, District Judge.

This is an action against Garelick Manufacturing Company (Garelick) for infringement of Patent No. 3,125,060 issued to plaintiff Stewart J. Leonard on March 17, 1964 and later assigned to plaintiff Skee-Trainer, Inc. Plaintiffs requested a permanent injunction enjoining defendant from infringing the patent in issue and treble damages for deliberate and willful infringement. The device in issue is an aid to people who are learning to water ski and is marketed under the name of "Skee-Trainer." The trial court, finding the patent invalid for want of invention, entered judgment for the defendant. From that judgment, plaintiffs have appealed. Jurisdiction is established by virtue of 35 U.S.C.A. § 281 and 28 U.S.C.A. § 1338.

The issue before the court concerns the validity of the trial court's interpretation of the words "prior art" found in 35 U.S.C.A. § 103 which provides:

"A patent may not be obtained * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

After rejecting two possible interpretations, the trial court adopted the following:

"3. Prior art, with respect to any simple mechanical device utilizing universally known principles, may be thought to refer to the field of mechanics itself. Regardless of the field in which he works, every prospective inventor is charged with knowledge of basic mechanical principles. If, by whatever criteria of invention may be invoked, courts decide that his innovation is too 'obvious', then it will not be patentable even though nothing really like it has existed before. More specifically, although the simplicity of a mechanical innovation will not automatically render it unpatentable, simplicity is itself strong evidence that 'invention' is lacking."

Relying on Caldwell v. Kirk Mfg. Co., 269 F.2d 506 (8th Cir. 1959), cert. denied, 361 U.S. 915, 80 S.Ct. 260, 4 L.Ed.2d 185 (1959), the court held the patent to be invalid for want of invention.

The task for this court is to ascertain whether the trial court applied the proper interpretation of the words "prior art" in determining the validity of the patent and, if the interpretation is valid, to decide whether the patent satisfies the requirements for patentability. There is no issue as to whether the patent satisfies the elements of "novelty" and "utility" enumerated in 35 U.S.C.A. §§ 101, 102. If the trial court applied the improper standard, the judgment must be reversed. Caldwell v. Kirk Mfg. Co., supra at 508–509.

Prior to the argument in this case the United States Supreme Court accepted for argument a group of patent cases, including three from this circuit. These

have since been argued and decided. In Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed. 2d 545 (1966), an Eighth Circuit case, the court construed section 103, supra, and explained its effect upon patentability of an invention.

Arguments were also had in two other cases from this Circuit, the *Cook Chemical* cases [Calmar, Inc. v. Cook Chemical Co.], reported at D.C., 220 F.Supp. 414 and 336 F.2d 110. They were decided at the same time as *Graham*; (See 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545). The *Cook Chemical* cases were reversed. *Graham* was affirmed. It was argued in these cases "that the first sentence of § 103 was intended to sweep away judicial precedents and to lower the level of patentability" (p. 16, 86 S.Ct. p. 693).

The Court concluded that Congress by the revision did not intend "to change the general level of patentable invention." (p. 17, 86 S.Ct. p. 693) and that

"[T]he 1952 Act was intended to codify judicial precedents embracing the principle long ago announced by [13 L. Ed. 683] this Court in Hotchkiss v. Greenwood, 11 How. 248 (1850), and that, while the clear language of § 103 places emphasis on an inquiry into obviousness, the general level of innovation necessary to sustain patentability remains the same." (3–4, 86 S. Ct. 686)

The Court went on to say:

"Approached in this light, the § 103 additional condition, when followed realistically, will permit a more practical test of patentability. The emphasis on non-obviousness is one of inquiry, not quality, and, as such, comports with the constitutional strictures." (17, 86 S.Ct. 693)

█ It is thus clear that *Hotchkiss* still controls. The net result of the decision is that the standard of invention, as enunciated over 100 years ago, remains the same and has not been altered either by intervening judicial interpretations or the congressional enactment of Section 103. The rule in *Hotchkiss*, in essence, is that a patentable invention must evidence more ingenuity and skill than that possessed by an ordinary mechanic acquainted with the business.

One striking aspect of the decision is the Court's total rejection of the suggestion that the Court, prior to *Graham*, had been imposing supposedly stricter standards of patentability.

"We have been urged to find in § 103 a relaxed standard, supposedly a congressional reaction to the 'increased standard' applied by this Court in its decisions over the last 20 or 30 years. *The standard has remained invariable in this Court.*" (19, 86 S.Ct. 694) (Emphasis added.)

The Court in a note explained the "flash of genius" phrase used in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58, saying it "was but a rhetorical embellishment of language going back to 1833."

"Rather than a more exacting standard, *Cuno* merely rhetorically restated the requirement that the subject matter sought to be patented must be beyond the skill of the calling. It was the device, not the invention, that had to reveal the 'flash of creative genius.'" (383 U.S. 15, 16, 86 S.Ct. 693)

Although the Court was unequivocal in stating that the standard as to patentability "has remained invariable in this Court" it used this language following the quoted words:

"Technology, however, has advanced—and with remarkable rapidity in the last 50 years. Moreover, the ambit of applicable art in given fields of science has widened by disciplines unheard of a half-century ago. It is but an even-handed application to require those persons granted the benefit of a patent monopoly be charged with an awareness of these changed conditions. The same is true of the less technical, but still useful arts. He who seeks to build a better mousetrap today has a long path to tread before reaching the Patent Office." (19, 86 S.Ct. 695)

The effect of *Graham* has recently been considered by this court in American Infra-Red Radiant Co., Inc. v. Lambert Industries, Inc., Cases, 8 Cir., 360 F.2d 977, decided May 20, 1966, and Kell-Dot Industries, Inc. v. Graves, 8 Cir., 361 F.2d 25, decided May 18, 1966. In *Lambert* it was stated:

"The Court made it clear that the statute merely codified the decisional law and the necessary level of innovation previously demanded by the courts had not been changed by the statute." 360 of 984 F.2d.

■ We now conclude that *Graham* does not invalidate the meaning the trial court gave to the words "prior art". In fact the trial court's statement "If, by whatever criteria of invention may be invoked, courts decide that his innovation is too 'obvious,' then it will not be patentable even though nothing really like it has existed before," is now supported by the teachings of *Graham*. We conclude, as did the trial court, that "prior art" may include not only earlier devices and publications but also similar devices whether or not in related areas to the patented device and with respect to a simple mechanical device utilizing universally known principles permits referring to the field of mechanics itself.

*Graham* teaches:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy." (17–18, 86 S.Ct. 694)

We must next determine whether by the standards of *Graham* the trial court reached a proper conclusion.

## BACKGROUND OF THE SKEE-TRAINER:

As previously stated, the device relates to a method of aiding beginning water skiers to learn to water ski quickly and efficiently. Allegedly, it overcomes the problem of teaching beginners to maintain a proper skiing position. Many methods have previously been employed to achieve this objective; such as attachments to the skis, special launching platforms, poles suspended from the side of the tow boat, and special water skiing schools.

Plaintiff Leonard, a champion skier, embarked on a project to build a simple, cheap, and safe device. His efforts culminated in the construction of the "Skee-Trainer" which achieved commercial success.

To describe the structure and the use of the device, the court adopts the language utilized by the trial court.

"The Skee-Trainer itself is very simple. It consists of two wooden bars placed across the open end of a U-shaped piece of aluminum tubing. One of the bars is at the very tip of the forward end of the Trainer, the other is a few inches back and parallel to the first. The rear bar has a loop of metal fixed in the center to which a tow rope may be attached. The trainer is twenty-two inches long and its width is about twenty-one inches in the front, tapering to about eighteen inches at the rear.

"In order to use the Trainer, a skier affixes a tow rope to the metal loop, puts on his water skis and then places the front tip of his skis between the wooden bars. By pressing downward, on the closed end of the U-shaped piece of tubing, he can clamp his skis firmly between the two wooden bars. The dimensions of the Trainer are such that, when the skis are clamped, they will automatically be spaced and directed properly for water skiing. The skier will also be held in the crouched position needed for starting.

"As the skier begins to be pulled through the water, he gradually re-

leases the downward pressure on the handle of the Trainer. This reduces the clamping pressure of the wooden bar and the Trainer slips smoothly off the skis and merely functions as a handle on the tow rope.

"In mechanical terms, the Skee-Trainer is a lever arm which transmits force to two parallel bars used as a friction clamp."

*PRIOR ART:*

Without discussing the prior art in the use of the principles of friction and leverage, it is necessary to examine devices similar to the Trainer in use or structure. At trial, two water ski aids previously patented were introduced into evidence: No. 2,938,220 for a "Water Ski Attachment" issued to R. G. Puckett, and No. 2,946,305 for a "Water Ski Towing Device" issued to T. G. Hill. Neither device, however, resembles the Skee-Trainer as each require a permanent or semi-permanent attachment to the skis.

Other devices similar to the Trainer were introduced into evidence. None of them, as found by the trial court, resemble "the Skee-Trainer or anticipate any of its basic features."

█ Despite the above conclusions, this court believes, and so holds, that the "Trainer" could have been developed and constructed by an individual with knowledge and skill in the field of mechanics.

*INVALIDITY OF THE PATENT:*

█ Although the Trainer is simple in structure, the court is required not to equate simplicity with obviousness. However, an invention, although new in the sense that nothing like it has previously existed, may still not be patentable if the difference between the new thing and what was known before is not sufficiently great to warrant a patent.

Examination of the entire record convinces this court that the construction of the "Skee-Trainer" involved only the application of mechanical ability. While the device may perform a functional use by aiding beginning skiers and although nothing comparable to it has previously been constructed, the court concludes that the device is obvious to a person having ordinary skill in the art. Congress did not authorize or tend to authorize the issuance of patents as a reward for mechanical skill.

Thus, the trial court's judgment is affirmed in all respects.