**Theodore C. GERNER, Appellant,**

v.

**MOOG INDUSTRIES, INC., Appellee.**

**No. 18525.**

United States Court of Appeals
Eighth Circuit.

Sept. 19, 1967.

Rehearing Denied Nov. 6, 1967.

---

Harvey B. Jacobson, Jr., Washington, D. C. (C. Perry Bascom, of Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., David C. Johnston and David C. Johnston, Jr., Oklahoma City, Okla., and Robert F. Davis, and Harvey B. Jacobson, Washington, D. C., on the brief), for appellant.

Frederick M. Woodruff, St. Louis, Mo. (Joseph J. Gravely, of Gravely, Lieder & Woodruff, and Malcolm I. Frank and Bernard Mellitz, St. Louis, Mo., on the brief), for appellee.

Before BLACKMUN, MEHAFFY and GIBSON, Circuit Judges.

MEHAFFY, Circuit Judge.

The sole issue for determination upon this appeal is the validity of United States Patent No. 3,044,798 which issued to Theodore C. Gerner on July 17, 1962. Gerner, a citizen and resident of Oklahoma, brought suit against Moog Industries, Inc., a Missouri corporation, alleging infringement of the patent. Moog denied infringement and additionally set up as a defense the invalidity of the patent.

The District Court in an opinion published at 254 F.Supp. 969 (E.D.Mo.1966) held the patent invalid as being a combination of old elements obvious to anyone with ordinary mechanical skill. We affirm.

### The Patent in Issue

The Gerner patent is a mechanical structure relating to the steering mechanism of an automobile. It is designed as a replacement unit for what is called an idler arm bracket, its object being to eliminate looseness or end play in the steering linkage. An idler arm is part of the automobile parallelogram steering linkage. It has a frame bucket end attaching to the front portion of the chassis opposite what is called the "pitman" arm on the steering column. The other end of the idler arm supports the steering linkage. Originally, the Patent Office rejected all claims but subsequently, upon amendment, the patent was issued. Claim 1 is the broadest in the patent and the elements and functions of the device are embodied therein:

"1. A replacement assembly for idler arms of an automobile steering linkage comprising an idler arm having a pivotal connection at one end for journaling the same upon the chassis of an automobile and having a pivotal connection at its other end for engagement with a portion of a steering linkage, at least one of said pivotal connections including a female member having a bore therein and a male member received therein, said male member including diametrically enlarged reversely varying surfaces, upper and lower wedge means each slidably received in and engaging the wall of the bore in said female member and having wedging surfaces complementary to and engaging those of the male member, resilient means yieldingly and continuously urging said wedge means into wedging contact with said male member and the female member whereby to automatically take up wear therebetween, said diametrically enlarged reversely varying surfaces being conical."

Specifically, the Gerner device embodies a female housing with a cylindrical bore which receives three lower wedge or bearing elements slidably placed therein. The male member has upper and lower reversible varying conical surfaces and is positioned in the bore so that the lower conical surfaces contact the interior surface of the lower bearing. Three upper wedge or bearing elements are likewise slidably introduced into the bore with interior surfaces contacting the upper conical surface of the male pin. The exterior of each upper and lower bearing is cylindrical and designed to make contact with the bore surface so as to inhibit rotational movement. The interior surface of each bearing element is conical in design to contact the corresponding surface of the male pin to permit relative rotation between. A spring maintains contact between the male pin surfaces and the surfaces of the bearing elements and urges the three upper bearing elements into a wedging contact with the upper bearing surface of the male pin. This force produces a wedging contact urging the male pin into its lowermost position and contacts against the interior surface of each lower bearing element. The effect of this is to automatically compensate for any tolerance that might exist between the bore, the wedge or bearing elements and the male pin in order to eliminate any looseness that might exist.

Gerner does not claim that his is the first idler arm but only that it meets the statutory requirement for patentability. As a matter of fact, other manufacturers, including Moog, were producing idler arms before the Gerner patent but their ball bearing structures did not lend themselves as well to one particular automobile, the Chevrolet.

### The Prior Art

Obviously, this is a crowded field as the references cited in the Patent Office file are: 1,261,856 Rule; 1,871,861 Rossman; 1,985,728 Ingersoll; 2,037,786 Hufferd; 2,048,803 Marles; 2,544,582 Booth; 2,745,688 Farrington et al; 2,853,327 Traugott; and 513858 Italy.

In addition to the prior art referenced by the Patent Office, Moog introduced at trial 111,900 Swiss; 2,769,651 Cain; 2,685,451 Greenwalt; 2,826,466 Pritchard; 2,937,033 Herbenar; and 2,994,829 Herbenar.

Patent drawings from Gerner, Ingersoll and Swiss, as well as the accused device, are attached to the District Court's opinion and we adopt them by reference.

The Swiss patent, as does Gerner, includes a male and female member with oppositely formed conical surfaces on the male member and with both upper and lower wedges or bearings slidably received in the female member having surfaces engaging those of the male member. It also embodies spring means which continuously urge the wedge means into wedging contact with the male member.

Cain also embodies a male and female member with oppositely formed conical surfaces on the male member and with upper and lower wedge means with surfaces complementary to and engaging those of the male member. Cain does not embody a spring but is constructed so the wedge means can be threaded up to adjust for wear.

The Ingersoll patent contains a male and female member with upper and lower wedge means and the bore of the female member having surfaces complementary to and engaging those of the male member.

The trial court found that a consideration of the Cain and Herbenar patents revealed that Gerner is basically a slightly different arrangement of the art which is already patented or in the public domain. The court stated that when the patent drawings of Gerner, Swiss and Ingersoll are placed side by side and the patent characteristics set out in identical colors, it is clear even to the unskilled how little variation in fact exists between Gerner and the prior art. Noting that the Patent Office in Gerner did not consider or reference the Cain or Swiss pat-

ents, the trial court observed that had these two patents been considered, the action of the Patent Office might have been different.

Professor Fisher, an expert for Moog, testified that all of the structures called for in Gerner Claim 1 are found in the Ingersoll patent and also that the Swiss patent, structure for structure, absolutely responds to the Gerner patent.

Gerner argues strenuously that both the trial court and Moog's expert exercised hindsight in arriving at their conclusions, but we disagree. The trial court's opinion not only reflects an intimate knowledge of the structure and functions of the patented device but a scrupulous adherence to the teachings of the Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), and its companion cases. A number of our post-*Graham* patent opinions holding invalidity for obviousness under 35 U.S.C. § 103, as interpreted and taught by *Graham*, are cited in L & A Products, Inc. v. Britt Tech Corp., 365 F.2d 83 (8th Cir. 1966). See also Superior Concrete Accessories, Inc. v. Richmond Screw Anchor Co., 369 F.2d 353 (8th Cir. 1966); Imperial Stone Cutters, Inc. v. Schwartz, 370 F.2d 425 (8th Cir. 1966). Further discussion here on the subject of nonpatentability for obviousness under § 103 as interpreted in *Graham*, supra, is unnecessary.

Gerner points out that the Ingersoll and Swiss patents relate to pivotal connections generally and not replacement idler arms. Prior art, however, includes earlier devices whether or not in related areas to the patented device. Skee-Trainer, Inc. v. Garelick Mfg. Co., 361 F.2d 895, 898 (8th Cir. 1966). The Ingersoll patent referred to a socket joint on the end of a tie rod and the Swiss patent is for a shock absorber and not directly for an idler arm, yet both relate to automobile mechanisms. Moog's expert witness testified that if somebody wanted a joint that takes up wear, it would only be necessary to utilize the Swiss disclosure.

It is argued that the three-section wedge means of Gerner is not disclosed in the prior art but the difference appears to be in configuration only because the prior art discloses upper and lower wedge means, which according to the witnesses perform the same function. But even if the addition of a new element to an otherwise old combination may create a new combination, this factor in itself does not eliminate the requirement of 35 U.S.C. § 103 that such a new combination is unpatentable unless the invention as a whole was unobvious to one of ordinary skill in the art at the time it was made. Cf. Application of Grout, 377 F.2d 1019 (C.C.P.A.1967).

We are convinced that the disclosures found in the prior art buttressed by the testimony of the expert witness provided a proper factual basis for the trial court's determination of obviousness of the claimed invention under 35 U.S.C. § 103. To paraphrase the language of the Supreme Court in Hotchkiss v. Greenwood, 11 How. 248, 13 L.Ed. 683 quoted in *Graham*, supra, 383 U.S. at 11, 86 S.Ct. 684—if there is improvement in the Gerner patent, it is the work of a skilled mechanic and not that of an inventor.

The secondary considerations—commercial success, failure of others, and long-standing need—do not, in our opinion, approach in substance those in *Graham*, supra, which failed to impress the Supreme Court in its consideration of the companion *Calmar* case, 383 U.S. 1, 35, 36, 86 S.Ct. 684, so as to tilt the balance to patent validity where the device fails to meet the nonobvious standard of § 103. Cf. Kell-Dot Industries, Inc. v. Graves, 361 F.2d 25, 30, 31 (8th Cir. 1966).

The judgment of the District Court holding invalid United States Patent No. 3,044,798 issued to Theodore C. Gerner, July 17, 1962, is affirmed.