Counsel will submit an appropriate order.

**RUBBERMAID INCORPORATED,**
Plaintiff,

v.

**CONTICO INTERNATIONAL, INC.** formerly **Continental Manufacturing Company, Defendant.**

No. 71 C 739 (3).

United States District Court,
E. D. Missouri, E. D.

Jan. 29, 1974.

Stewart N. Senninger and John K. Roedel, Jr., Koenig, Senninger, Powers & Leavitt, St. Louis, Mo., Hamilton, Renner & Kenner, Akron, Ohio, for plaintiff.

Ralph W. Kalish, St. Louis, Mo., for defendant.

## MEMORANDUM

WANGELIN, District Judge.

This matter was tried to the Court without a jury and the Court has been duly advised by testimony, documentary evidence and briefs of all the parties and makes the following findings of fact and conclusions of law:

This is an action for infringement of a patent brought pursuant to the Patent Act, Title 35, United States Code. This Court has jurisdiction under 28 U.S.C. Section 1338 and 2201. Venue is proper under 28 U.S.C. Section 1400(b). Plaintiff is a Ohio corporation having its principal place of business at Wooster, Ohio. Plaintiff is the assignee of United States Patent 3,482,730, granted on December 9, 1969, the patent allegedly infringed in this suit. The defendant is a Missouri corporation with its principal place of business at St. Louis, Missouri.

Patent 3,482,730 (herein known as the Podwalny patent) is described as a free swing waste receptacle cover and when placed atop a receptacle it operates to allow the ingress of waste. The plaintiff manufactures and sells the waste receptacle under the trade designation "Untouchable." The Podwalny patent claims are:

I claim:

1. In combination with an open top receptacle having side walls with opposed openings therein and substantially flat supporting surfaces at the bottom edges of said openings, a cover swingably mounted within said open top for normally closing the receptacle, said cover having a transverse central apex portion and two equal top portions sloping downwardly in opposite directions therefrom, said cover having two integral pivot lugs projecting outwardly from the ends of said apex portion to enter and receptacle side wall openings, and said lugs having substantially flat bottom portions rockably supported on the bottom supporting surfaces of said openings.

2. The receptacle and cover as defined in claim 1, in which the substantially flat bottom portions of the pivot lugs abut the substantially flat bottom surfaces of the bottom notches of the side wall openings in the closed position of the cover.

3. The receptacle and cover as defined in claim 1, in which the receptacle and cover are of plastic material.

4. The receptacle and cover as defined in claim 2, in which the receptacle and cover are of plastic material.

A less precise but more graphic description of the patent and its operation is that of a refuse base with a housing which mates the door to the refuse base and a cover which consists of two-semicircular portions sloping downwardly and extending away from the apex portion. The cover fits into and is supported by the housing on two pivot lugs extending from the cover's apex. Such lugs have a flat-bottomed underside and are rockably supported on the flat surface of the apertures in the housing. With the application of a force upon either semi-circular top portions of the cover, the cover will rock at the apex upon its lugs so as to open the receptacle while allowing the force producing stimulus to fall into the receptacle. Upon the expiration of the force the flat-bottom lugs will rest horizontally on the flat support surfaces of the openings.

The defendant Contico after finding samples of the plaintiff's "Untouchable" in the market place commenced, in or about September of 1970, to copy it without alteration. In late spring of 1971 defendant began marketing the copied version. Sometime in May of 1971, after discovery of the plaintiff's patent, defendant modified the underside portion of its pivot lugs to include two parallel grooves. On August 30, 1971, defendant received notice of infringement from the plaintiff and thereafter defendant further modified the pivot lug providing it with an inverted V-shaped indention.

The evidence, both verbal and demonstrative, indicates that the patent in suit and the accused mechanism are substantially identical in substance and operation save for the accused having unequal top portions of the cover and not having substantially flat-bottom portions of the pivot lugs.

■ The federal patent power is predicated upon the specific constitutional provision which authorizes the Congress "To promote the Progress of . . . useful Arts, by securing for limited Times to . . . Inventors the Exclusive Right to their . . . Discoveries." Art. I, Section 8, Clause 8. Circumscribed by the Constitution, Congress may set out conditions and tests for patentability. McClurg v. Kingsland, 1 How. 202, 206, 11 L.Ed. 102 (1843). The Commissioner of Patents and the courts are charged with the duty in the administration of the patent system to give effect to the constitutional standard by appropriate application, in each case, of the statutory scheme of the Congress. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965).

Pursuant to the Constitutional grant of power and in light of the Hotchkiss v. Greenwood, 11 How. 248, 13 L.Ed. 683 (1851), formulation of patentability,[1] the Congress in the 1952 Patent Act described the three conditions of patentability: utility[2] novelty[3] and *nonob-*

---

1. "[u]nless more ingenuity and skill . . . were required . . . than were possessed by an ordinary mechanic acquainted with the business, there was an absence of that degree of skill and ingenuity which constitute essential elements of every invention. In other words, the improvement is the work of the skilful mechanic, not that of the inventor." Hotchkiss v. Greenwood, *supra* at 267.

2. § 101. Inventions patentable
Wl.oever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

3. § 102. Conditions for patentability; novelty and loss of right to patent
A person shall be entitled to a patent unless—
(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or
(b) the invention was patented or described in a printed publication in this or a

*viousness.* In the case at bar there has been no challenges as to conditions of novelty and utility and this Court can envisage none. The crux of the controversy centers on section 103, which provides:

> 35 U.S.C. § 103. Conditions for patentability; nonobvious subject matter
>
> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The proper mode of application of the above section was described by the Supreme Court in Graham v. John Deere Co., *supra*, wherein it was said:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent are resolved.

In considering the obviousness vel non of the patent in suit this Court shall first examine the file history of such, then determine the scope and content of the prior art, then compare and contrast the prior art and the patent in suit and finally determine the level of ordinary skill in the pertinent art.

The file history shows that there were eight original claims for the patent in suit. The original claim one was the only independent claim and is precisely the same as patent claim one save for the omission of the phrases "substantially flat." Original claim two was dependent upon claim one and stated that the bottom portions of the lugs had flat bottom surfaces. Original claim three was also dependent upon claim one and provided that the side wall openings had bottom notches with flat horizontal surfaces. Original claim four was dependent upon claim two and defined the bottom edges of the side wall openings as being flat horizontal surfaces. Original claim five was also dependent upon claim two and stated that the pivot lugs are rockably supported on the side wall openings. Original claim six was dependent upon claim three and recited that the pivot lugs had flat-bottomed surfaces supported on the horizontal flat-bottomed surfaces of the notches of the side wall openings. Original claims seven and eight, both dependent upon claim one, provided that the receptacle and cover were made of plastic material.

The Examiner rejected original claim one over the Vidal Patent, No. 3,282,938 in view of the Edwards Patent, No. 1,238,993, and in reliance on the doctrine of obviousness he stated: 'To make the closure of Vidal with downwardly sloping top portions as shown by Edwards

foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or

(c) he has abandoned the invention, or

(d) the invention was first patented or caused to be patented by the applicant or his legal representatives or assigns in a foreign country prior to the date of the application for patent in this country on an application filed more than twelve months before the filing of the application in the United States, or

(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or

(f) he did not himself invent the subject matter sought to be patented, or

(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

would be obvious." The Examiner rejected original claims two, three, five and seven as unpatentable for obviousness over the Vidal Patent in view of the Edwards Patent and the German Patent to Leman No. 816,300. Regarding original claim two, the Examiner said: "To provide flat surfaces on the bottom of Vidal's pivot lugs as shown by Leman would be obvious." In rejecting original claim three, he stated: "The bottom of the notches being flat themselves is not seen to be unobvious, this is a mere change in shape." With respect to the rejection of original claims seven, the Examiner said: "The material selected to make the elements is a matter of choice and therefore obvious." Original claims four, six and eight were objected to by the Examiner as being incomplete since they depended upon rejected claims. He did indicate such objected to claims would be allowed in independent form.

Thereafter, the patent applicant in response to the Examiner's initial decision cancelled original claims two, three, four and five and amended claim one by the insertion of the phrase "substantially flat" to limit both the bottom portions of the lugs and the bottom edges of the side wall openings. Original claim six was rewritten and corresponds to claim two of the patent. Original claim eight constitutes claim three of the patent. Claim four of the patent was an addendum.

The three patents, Vidal, Edwards and Leman, cited by the Patent office during the prosecution of the patent in suit when taken together indicates that the Examiner found only one distinction over the prior art, namely the "substantially flat" bottom surfaces of the pivot lugs and the side wall openings. The Vidal Patent discloses an ash tray comprised of a sylindrical body having a closed bottom wall and an open top portion provided at diametrically opposite locations with notches opening at the upper edge of the wall and extending downwardly from said edge to form vertically unobstructed mouth portions leading to pivot supporting saddles. Its cover is automatically re-closable having diametrically opposite projecting pins free to enter and to leave said unobstructed mouth portions of the notches by manual lowering and lifting thereof. Said pins are located above the center of gravity of the cover so as to close the open top of said body automatically when the pins rest on the bottom of the groove.

The Edwards Patent shows a self-closing receptacle having a wedge-shaped cover which is supported by a round shaft disposed along the apex thereof and journaled in a circular support. The two equal downwardly sloping closure portions of the cover extend at approximately the same angle from its transverse Apex portion and will respond so as to operate when a substantial weight is dropped upon one of the door portions. This Court views the Edwards Patent to contain all the elements of the patent in suit, individually and in combination, save for the substantially flat pivot lug on a substantially flat support surface.

The German Patent to Leman reveals a mustard jar which is hinged at its edge rather than at an apex. The Patent Examiner cited it as suggesting the use of a pivot pin having a flat configuration. Properly stated the pivot pin has a rectangular or an oval shape resting upon a circular opening. Therefore, it cannot be said that it anticipates a substantially flat supporting surface, however, it does suggest the employment of a flat pivot pin.

Ergo, viewing the Patent office's above cited patents together, the issue of obviousness is delimited to the utilization of a substantially flat bottomed pivot lug rockably supported on a substantially flat surface.

The defendant's effort to establish the alleged obviousness of the above stated utilization is not restricted to the Patent office's cited prior art. Rather, the defendant relies upon eleven separate patents which is urged to be indicative of a flat bottomed surface being rockably

supported upon a flat support surface. The plaintiff argues that these eleven patents are inapplicable as they in no way relate to the waste receptacle art. However, this Court recognizes the trend toward widening the scope of prior art which can be considered pertinent, Mandel Brothers, Inc. v. Wallace, 335 U.S. 291, 69 S.Ct. 73, 93 L.Ed. 12 (1948); Geo. J. Meyer Mfg. Co. v. San Marino Electronic Corp., 422 F.2d 1285 (9th Cir. 1970); Gerner v. Moog Industries, Inc., 383 F.2d 56 (8th Cir. 1967); Skee-Trainer, Inc. v. Garelick Mfg. Co., 361 F.2d 895, 898 (8th Cir. 1966),[4] and holds that said patent are relevant to the patent in suit.

In following that this prior art is relevant, then circumspection must be given to the fact that such prior art was not considered by the Patent Office during the prosecution of the patent in suit. Though a patent is presumed valid, Graham v. Jeoffroy Mfg., 206 F.2d 769 (5th Cir. 1953), such presumption is weakened, if not completely destroyed, by proof of prior non-considered art. Ralston Purina Co. v. Gen. Food Corp., 442 F.2d 389 (8th Cir. 1971); American Infra-Red Radiant Co. v. Lambert Industries, Inc., 360 F.2d 977 (8th Cir. 1966), cert. den. 385 U.S. 920, 87 S.Ct. 233, 17 L.Ed. 2d 144 (1966). Therefore, as the non-considered art is relevant the initial presumption of validity is at least diminished and at most negatived.

After examination of the eleven non-considered patents it is apparent to this Court that their elements and principles though packaged differently, correspond to the portion of the claim at issue. For instance, the Flint Patent, No. 712,786, and Levay et al. Patent, No. 1,242,820, show self-righting rockable toys which have round sides and a flat bottom. In operation, the dolls rock to and fro upon their hemispherial portions until the initiating force dissipates whereupon the doll will rest in a vertical position with their flat bottom surface resting upon a flat surface. It should be noted that at some point near the expiration of the initiating force, the rocking movement is limited to the flat bottom of the doll upon the flat surface. There can be no distinction between this latter movement and the movement of the patent in suit.

The Pavey Patent, No. 1,716,281, and the Taylor Patent, No. 1,261,184, both show a barrel support having a flattened base in order that it may support the barrel in a horizontal position. After the diminishment of a force upon either support, both would automatically return to a flat on flat disposition. Again, though the form of the mechanism is different from the patent in suit, the substance of a flat on flat posture is graphically present.

The remainder of defendant's non-considered prior art are merely cumulative and reinforce the common utilization of a flat on flat posture.

The plaintiff asserts a number of different distinctions between the patent in suit and the afore discussed prior art. From the outset, it should be emphasized that patents are contracts between the United States and the patentee and should be construed as a whole, Strong-Scott Mfg. Co. v. Weller, 112 F.2d 389 (8th Cir. 1940), with the terms of a claim understood to refer to and be explained by the structure set forth in the drawings and specifications. American Fruit Growers, Inc. v. Brogdex Co., 283 U.S. 1, 51 S.Ct. 328, 75 L. Ed. 801 (1930). Moreover, the meaning which the patentee gives to the words of his patent cannot be made to depend upon subsequent events, but should appear when the application is filed. Universal Oil Products Co. v. Globe Oil and Refining Co., 137 F.2d 3 (7th Cir. 1943). With this background it is urged by the plaintiff that one differentiating feature in the non-considered

---

4. In Geo. J. Meyer Mfg. Co. v. San Marino Electronic Corp., *supra*, the Ninth Circuit Court of Appeals held that missile and star tracking to be a pertinent prior art to the bottle inspection field.

prior art and the patent in suit is that the former does not rock upon spaced parallel lines of contact, whereas, the latter does. Nowhere is such feature made a part of the patent claim, but instead it is a difference predicated upon hindsight perspective. This contention is wholly without merit.

Plaintiff claims further distinction in the non-considered prior art and the patent in suit as the former have their respective centers of gravity substantially above the supporting surface, whereas, the latter is below the supporting surface. Again, the precise location of gravity is not a part of the patent claims. Moreover, this Court deems such distinction to be de minimis.

Juxtapositioning the prior art, both considered and nonconsidered, with the patent in suit, this Court can find only an amalgam of known elements. It is conceded that plaintiff's aggregation results in a utilitarian product, however, such combination is nothing new, surprising or novel, nor is a new function created or a useful addition of knowledge taught to the prior art. Kell-Dot Industries, Inc. v. Graves, 361 F.2d 25, 28 (8th Cir. 1966). The Supreme Court in Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 (1938), teaches us:

> The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation that theretofore performed or produced by them, is not patentable invention. At 549, 58 S.Ct. at 664.

Before reaching the threshold question of obviousness it is necessary to measure the knowledge of one ordinarily skilled in that art. The proper mode of doing so as expressed by the Eighth Circuit Court of Appeals is that "[k]nowledge of a hypothetical person skilled in the light of that art, who has thought about the subject matter of the patented invention of that art." Flour City Architectural Met. v. Alpana Alum.

Prod., Inc., 454 F.2d 98, 107 (8th Cir. 1972). This Court by no torture of its imagination can find such hypothetical person who would be unable to design the patent in suit. Supportive of this result is the case of National Connector Corp. v. Malco Manufacturing Co., 392 F.2d 766 (8th Cir. 1968), wherein, the crucial issue centered around the obviousness of a metal pin inserted into a base plate for a terminal connector. In claiming infringement the plaintiff urged uniqueness in his patent which incorporated a flat or rectangular pin fitted into a smaller aperture. Formerly the pin had been round, but the Court could find "nothing novel or unique in changing a round pin to a flat one" by stating that "[d]ifferences in configuration only are not patentable." Gerner v. Moog Industries, Inc., 383 F.2d 56 (8th Cir. 1967).

Accordingly, this Court finds that the Podwalny patent when considered with the prior art and particularly that not cited by the Patent Office is invalid because the combination of old elements is obvious to the hypothetical person skilled in the art.

