**The INDEPENDENT NAIL AND PACK-ING COMPANY, Inc., Plaintiff,**

**v.**

**Joseph A. THIEL, Defendant.**

**No. 60 C 19(1).**

United States District Court
E. D. Missouri, E. D.

Sept. 26, 1963.

Thomas F. McWilliams, Mann, Brown & McWilliams, Chicago, Ill., and Roy A. Lieder, Gravely, Lieder & Woodruff, St. Louis, Mo., for plaintiff.

Alfred W. Petchaft, St. Louis, Mo., for defendant.

HARPER, Chief Judge.

This complaint was initially brought by a single plaintiff, The Independent Nail and Packing Company, Inc., a Massachusetts corporation having its principal place of business at Bridgewater, Massachusetts. The plaintiff company went through corporate reorganization during the pendency of this litigation, with the result that a second corporation, namely, The Independent Nail Corporation, has now become the operating or manufacturing corporation. It was agreed that the new corporation might be added as a party plaintiff and as a defendant to the counterclaim (both plaintiffs being referred to herein as Independent Nail).

The present complaint was initiated as a declaratory judgment suit by the alleged infringer, the Independent Nail and Packing Company, Inc., seeking a declaration of invalidity of United States Letters Patent No. 2,885,169, granted May 5, 1959, to Joseph A. Thiel (the defendant). The patentee, Joseph A. Thiel, has filed a counterclaim against Independent Nail for infringement of the said patent.

The defendant is a citizen and resident of the Eastern District of Missouri. Jurisdiction of the cause of action and of the parties arises under U.S.C.A. Title 28, Sections 1331, 1332, 1338 and 2201.

The devices that form the subject matter of this litigation are known generally as conduit holders and are hook-like members made of wire (malleable metal) designed to be driven into walls, studding, joists and similar structural elements of buildings for supporting electrical conduit. Such conduit holders are a matter of importance in the construction industry and particularly in the electrical installation trade.

Independent Nail contends that their conduit holder (which defendant Thiel claims infringes his patent) was in production prior to the invention of the Thiel patent. Plaintiff, Independent Nail, also contends that the defendant Thiel's patent is invalid for several reasons. First, plaintiff contends that there have been prior wire-form devices, therefore what defendant Thiel contributed over such prior art, if anything, did not constitute an invention within the meaning of the patent statutes. Plaintiff urges that there is no invention in bending a piece of wire to the same shape as the prior art structures.

Defendant Thiel contends that there was a recognized need in the electrical installation trade for a conduit holder which would obviate disadvantages of prior conduit holders. Thiel contends that he conceived the idea of bending the metal in such a way as to create a "localized zone of hardness" at the inside of the bend in the metal, which is an invention and improvement over prior cold-working processes. Defendant Thiel claims that prior cold-working processes produces a *generalized hardness* across the entire cross-section of the metal part, whereas the defendant's conduit holder was made in such a way as to create a *localized zone* of hardness at the inside of the bend.

To the above contention the plaintiff, Independent Nail, contends that the defendant Thiel's patent is invalid because there is no explanation in the patent specifications or claims of where the so-called localized zone of hardness is located, what is its width, length or area, and there is nothing mentioned as to the degree of hardness of the localized zone as compared to the hardness in a general zone of hardness.

Defendant Thiel also argues that the plaintiff has the burden of proving the invalidity of defendant's patent, and that the defendant Thiel conceived the idea of the electrical conduit holder prior to plaintiff doing so. This would mean that there was no prior inventorship by the plaintiff, Independent Nail.

We shall first consider whether the defendant's patent is invalid on grounds of prior inventorship by the plaintiff. It seems clear from the record that the plaintiff conceived the idea of his electrical conduit holder sometime in late 1954 or early 1955. This fact was brought out in the record (p. 61) by the testimony of Alan D. Stone and in the deposition taken of H. James Stone. It also seems likely that the plaintiff would have had to have conceived the idea by this date because it started production in March, 1955, and it is conceded that plaintiff had made a commercial sale by August 11, 1955. It is obvious that the plaintiff would have needed several months between conceiving the idea and the first commercial sale.

There is some difficulty in determining when the defendant conceived the idea of the Thiel electrical conduit staple. The record shows that Joseph Thiel and Harold Weseloh, toolmaker and purchasing agent for Thiel Tool testified that defendant conceived the idea in June, 1954. However, a deposition taken of Joseph Thiel shows that Thiel testified that it was approximately September, 1955, before defendant had made a commercially satisfactory electrical conduit staple. The record further shows that the machine to commercially produce defendant's staples was not completed until October, 1955, with production starting in March, 1956.

**1006**

The plaintiff queries why the delay between the supposed date of conceiving the idea (June, 1954) and the date of being able to produce the staples for commercial sale (October, 1955). However, the record supports the defendant's contention that he conceived the idea in June, 1954. Documentary proof was admitted into evidence showing that experiments were made on June 10, 1954, and other physical evidence shows that defendant conceived the idea in early June, 1954, which is prior to plaintiff's conceiving the idea.

■ The court accordingly finds that the defendant, Joseph Thiel, conceived the idea of the electrical conduit holder prior to plaintiff doing the same.

■■ The plaintiff must sustain the burden of proving the defendant's patent invalid. (See U.S.C.A. Title 35, Section 282.) This rule is followed by the Eighth Circuit. (See Donner v. Sheer Pharmacal Corp., 8 Cir., 64 F.2d 217, and Strong-Scott Mfg. Co. v. Weller, 8 Cir., 112 F.2d 389.) However, in the case at bar the plaintiff, Independent Nail, has clearly sustained this burden of proof and rebutted the presumption of validity. The plaintiff has clearly proven invalidity for several reasons.

It is clearly shown in the record that if you take a piece of wire and hold it in a gripping die and bend it by a forming die, you get a zone of hardness at the bend. This is inherent in the bending operation (Tr. pp. 219–20, 370). It is, therefore, obvious that there is no invention in merely achieving hardness at the juncture by cold-working, which is inherent in any bending process. It is also clear that there is no invention in the specific shape of the Thiel conduit holder. This was not even urged by the defendant.

The defendant argues that in the prior art there is no teaching of a localized zone of hardness and that this is the teaching of the Thiel patent. Defendant contends that a generalized type of hardening resulted from the conventional cold-working processing of the prior art, but that the Thiel patent teaches a localized zone of hardness.

However, even one of defendant's expert witnesses admits that if a person does what is specifically taught in the patent specifications, a person might not get a localized zone of hardness (Tr. pp. 427–28). This definitely suggests that the patent specification was not described in such a manner so that one skilled in the art could follow it and produce the result which is claimed by the patent. (See U.S.C.A. Title 35, Section 112; Donner v. Sheer Pharmacal Corp., supra.)

The evidence shows that the defendant's conduit holder's impact area is softer than the underside of the juncture (Tr. p. 359); however, there is no mention in the patent specification just what degree of hardness exists. There also is no mention in the Thiel patent as to what is meant by the region of juncture and its limits. The defendant claims having an invention because of a localized zone of hardness, yet the patent clearly does not show where it is, how it is made or how hard the localized zone actually is. Even assuming that the defendant made a contribution to the art, it is abundantly clear that defendant failed to specifically point out and claim what he considered his invention to be. This is obviously a failure on defendant's part to comply with the patent statutes. (U.S.C.A. Title 35, Section 112.) It is admitted by one of defendant's expert witnesses (Tr. p. 370) that you get a general hardness in the zone of the bend when wire is bent. This being true, it is clear that the Thiel patent does not explain the difference between the prior art and defendant's patent.

The court will accordingly enter a declaratory judgment adjudging Letters Patent No. 2,885,169 invalid and void in law and not infringed by any product made, sold or used by plaintiff.

The court will grant a permanent injunction restraining defendant, his agents, servants, employees and attor-

neys from asserting against plaintiff, or distributors or customers of plaintiff, or users of plaintiff's products, any alleged right of whatever nature arising from Letters Patent No. 2,885,169 because of any sale or manufacture by plaintiff of conduit holders.

Plaintiff's prayer for attorneys' fees is denied.

This memorandum opinion is adopted by the court as its Findings of Fact and Conclusions of Law, and the attorneys for the plaintiff will prepare the proper judgment, submit same to the attorneys for defendant for approval as to form, and then to the court for entry.