**RALSTON PURINA COMPANY, a corporation, Plaintiff,**

v.

**GENERAL FOODS CORPORATION, a corporation, Defendant.**

No. 67 C 413 (2).

United States District Court,
E. D. Missouri, E. D.

Sept. 9, 1969.

Frederick H. Mayer, Cook, Murphy, Lance & Mayer, St. Louis, Mo., Price, Heneveld, Huizenga & Cooper, Grand Rapids, Mich., for plaintiff.

John P. Emde, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., Arthur G. Connolly and Richard E. Cornwell, Connolly, Bove & Lodge, Wilmington, Del., Michael J. Quillinan, General Foods Corp., White Plains, N. Y., for defendant.

## MEMORANDUM

MEREDITH, Chief Judge.

This action involves the validity and infringement of defendant's United States Patent No. 3,047,395, issued July 31, 1962, entitled "Protein Food Product and Process" (hereinafter the "Rusoff patent"). The Rusoff patent issued from application serial No. 40,989, filed June 15, 1960, in the names of Rusoff, Ohan, and Long. The patent has been owned by defendant since its issuance. The action arises under the patent laws of the United States, and the jurisdiction of this Court is based upon 28 U.S.C. § 1338 and 28 U.S.C. § 2201, the Declaratory Judgment Act. Plaintiff initiated the action seeking a declaratory judgment that defendant's patent is invalid, unenforceable, and not infringed. Defendant counterclaimed for infringement, seeking injunctive relief and damages.

Plaintiff (hereinafter "Ralston") is a Missouri corporation, with its principal place of business in St. Louis, Missouri. Defendant (hereinafter "General Foods") is a Delaware corporation, with a place of business in St. Louis County, Missouri, within the jurisdiction of this Court.

The process and product described in the Rusoff patent was first observed by

General Foods in May 1958. The Rusoff patent has never been commercially practiced by General Foods, nor has any license ever been granted under the patent even though General Foods has reviewed the process to determine its potential for commercial production. The Rusoff patent is a paper patent.

Ralston is charged with infringing process claims 1 through 4 and product claims 12, 17, and 18 of the patent in suit by reason of its manufacture and sale of Chuck Wagon dog food. Chuck Wagon is a dual component product composed of a farinaceous component of yellow color and a proteinaceous component of red color. Only the red component is charged with infringement.

Ralston contends all of the claims of the Rusoff patent are invalid. Since the claims not charged with infringement differ from those charged with infringement only by minor variations, and since there is a substantial public interest involved, Ralston requests this Court to adjudge the entire Rusoff patent invalid.

The testimony at trial concerned technical matters, and conflicts therein were resolved by this Court upon careful consideration of the most credible evidence, both testimonial and documentary, and an evaluation of the courtroom demonstrations and physical exhibits. The findings herein are in large measure predicated upon an observation of the witnesses and a consideration of their demeanor, competency, and credibility.

The Rusoff patent pertains to a process for converting, by heat coagulation, finely divided, substantially undenatured, low cost, protein materials having enough moisture to form a slurry or paste thereof, by the simultaneous application of very high temperature and mechanical agitation, to stretch the molecular structure of the protein material and coagulate it as it is heat denatured, into a molecularly oriented fibrous mass, very closely resembling the texture and appearance of animal muscle tissue such as is found in pork, steak, ham, and chicken, followed by rapid cooling. The product produced by the process is alleged to simulate the texture and appearance of high quality meat cuts and as such to be a sinuous aggregation of coagulated, molecularly oriented protein material.

The first batch of material accidentally made by Rusoff was on May 27, 1958, in an autoclave. An autoclave is like a pressure cooker, which is equipped with an agitator and a means for injecting high pressure steam into the vessel. The material used was ground raw liver. The temperature was 390° fahrenheit, and was achieved in three and a quarter minutes. It was cooled to 190° fahrenheit in five and three-quarter minutes.

There was no credible evidence that any product of any consequence has been made in a Votator or an extruder by General Foods while following the teachings of the Rusoff patent.

General Foods had an option on the Boyer and Anson patents and was working with them when the Rusoff discovery was made. There is some testimony that after the initial discovery, experiments were run using chicken paste and soy protein with and without fat. A chicken potpie meat material was produced and used on certain tests, but no commercial use has been made of them.

The Rusoff patent provides in substance for a starting material which is "substantially undenatured and finely divided", such as soybean meal recovered as a byproduct after solvent extraction of soybean oils. Fish flour, chicken scraps, ground liver, ground hearts, and meat scraps may also be used as a starting material. This is mixed to form a paste or slurry. The protein source is preferred to be 30–100% of the solid on a dry basis. The protein source is mixed with water or other aqueous liquid to form a paste or slurry having a 50–80% moisture content. This is heated to 300°–400° fahrenheit in less than five minutes. During heating it is agitated 30–500 R.P.M., then cooled to less than 200°.

The Ralston process starts with soybean meal which has been toasted and is

almost completely denatured. This toasting process takes from twenty-five to thirty minutes at temperatures up to 215°. The protein content is about 50%. Sulphur is added to the meal and this is placed in a mixing machine which adds steam and water comixed with red dye so that the moisture content is from 32% to 38%. This material flows from the mix machine into an extruder which has a ten to twelve foot long barrel having rifling. Inside this barrel is a screw, which operates at 125 to 140 R.P.M., forcing the material under pressure to the end. At the end of the barrel there is a chamber, and then a restriction plate with a hole in it. The barrel is covered by a jacket and is heated and cooled by the water and steam so that the temperature of the material may reach from 250° to 350° fahrenheit.

The restriction plate may be omitted and then the material which is forced through the barrel by the screws, and after leaving the chamber, enters a wimpus pipe with a disc cup on the end. The material flows through the hole and is cut off by revolving knives into chunks just after discharge when it is cooled. The material at that point is in rope-like chunks and is conveyed to a dryer where it is dried. Thereafter, meat slurry is added to the chunks. There is almost 100% recovery of the solid material in Ralston's process. This process will not work if the liquid content goes up to 50%. It will not work unless the sulphur is added. It will not work if fat is left in the soy material. The mixture and extruder can be run continuously for two or three days to produce the red chunks in the Chuck Wagon product. When the moisture level is as high as 38%, it is neither a slurry or a paste, but merely a damp meal. It takes about fifty to sixty seconds for the material to pass through the extruder. There were no heat measuring devices on the Ralston machine, but for the purpose of the trial, measuring devices were added to determine temperatures.

The toasting process consists of steaming, heating, flaking the beans, removing the oil and fat from them and then drying and grinding. This process has been used at Ralston since 1959. The toasting process results in almost completely denaturing the starting material.

The Anson patent No. 2,830,902, dated April 15, 1958, is the only patent cited in the Rusoff patent by the Patent Office. This patent provides for making meat-like fibers from soybean flour and other vegetable protein by the addition of an aqueous solution and then centrifuged to remove the insoluble fraction of the meal. Heat to 95° centigrade with live steam for five minutes. Add hydrochloric acid, heat again, then centrifuge. This results in a solid of about 30% to 40%.

The Boyer patent, No. 2,682,466, was assigned to Ralston in 1962, when Boyer went to work for Ralston. Prior to that time, Boyer granted licenses to Worthington Foods. Worthington Foods is now making ham loaf, chicken loaf, and other similar products from soybeans for commercial use by the Boyer patent.

In a series of tests made at Ralston's request by Food Technology, Inc., of Chicago, Illinois, following the Rusoff patent and using a five-gallon autoclave, a number of interesting results were obtained. Using different types of soy starting materials, fibers were obtained at temperatures as low as 228° fahrenheit. When the temperature was above 330° and up to 380°, the fibers were soft and spongy, not firm. The best fibers were obtained at around 275° on certain types of soy material. When the R.P.M. were reduced on the agitator from 400 to 140, no fibers were obtained. At 240 to 276 degrees fahrenheit, the best fibers were obtained.

When the autoclave was just shut off and allowed to cool over night, instead of rapid cooling, as called for in Rusoff, the fibers were as firm as when rapidly cooled. They were not as light

in color, however. These experiments, coupled with the evidence in the case, show that the Rusoff patent is invalid, for the reason that the processes and definitions of the patent are not realistic.

Based on the experiments performed by Food Technology and the other evidence in the case, the Court finds:

(a) That the temperature range of 300°–400° fahrenheit in the Rusoff patent is meaningless;

(b) That the rapid cooling limitation has little effect on the product and is also meaningless;

(c) That the agitation range of 30–500 R.P.M. is meaningless. The range should be 225 to 300 R.P.M.

35 U.S.C. § 112 requires that the patent shall contain a written description of the invention in such full, clear, concise, and exact terms as to enable any person skilled in the art to make the same. Failure to do so makes the patent invalid. 35 U.S.C. § 282(3). See Independent Nail and Packing Co. v. Thiel, 222 F.Supp. 1004 (E.D.Mo.1963), aff'd 333 F.2d 837 (8th Cir. 1964).

General Foods observed Ralston's product, Chuck Wagon, when it first appeared on the market. The advertising agencies for Ralston use the terms meaty chunks and meat broth in describing the red chunks, but as a matter of fact, an examination of these chunks shows that they are a porous, puffed, sponge-like and ropelike material that have little resemblance to sinuous meat fibers. General Foods first thought Chuck Wagon had meat in it. That company was unable to duplicate anything that resembled Chuck Wagon until it had obtained Ralston's actual formula in the course of this trial and observed the actual machine in which the product was made. Prior to Rusoff, General Foods had made some simulated meat products, such as pork, bacon, and chicken, using the Boyer patent. Products made by the Boyer patent may be cooked without disintegrating.

The Norman patent, No. 2,165,721, issued July 11, 1939, pertains to the processing of raw blood. The process calls for agitation and while being heated, live steam is injected to 212° fahrenheit, then sealed in a can and heated to 300° fahrenheit, resulting in a mass resembling meat.

Kellogg patent, No. 670,283, issued March 19, 1901, pertains to wheat gluten, peanut meal, or other vegetable meal mixed with water, heated to 230°, cooked for one to three hours. The resulting food product resembles potted veal or chicken, and is like a meat product.

Wrenshall patent, No. 2,560,621, issued July 17, 1951, teaches the conversion of meat substitutes from soya grits by adding water and heating from 200° fahrenheit to 400° for twenty-five to sixty minutes, and heating 212° fahrenheit from ten to sixty minutes.

Meyer patent, No. 2,631,111, issued March 10, 1953, provides for taking corn gluten, making a slurry, heat for five minutes, at 312° fahrenheit with steam pressure at 80 p.s.i.; two minutes at 350° fahrenheit using 135 p.s.i.; 260° fahrenheit with 35 p.s.i.—twenty minutes. ' This process increases the protein in the gluten to around 70%.

Boyer patent, No. 2,682,466, provides for making meatlike fibers from vegetable and animal protein by the use of spinnerettes, making a paste and using a salt bath. These fibers are then bound together, then flavored, and cooked. They resemble pork, chicken, beef, and other meats.

■ The combination of the teachings of Meyer, Norman, Kellogg, Wrenshall, and Boyer really cover anything that is shown in Rusoff. None of these were cited by the Patent Office. The presumption of validity of the patent, 35 U.S.C. § 282, has been overcome by the prior arts not cited. This is particularly true when the limits of Rusoff are not realistic limits.

The Rusoff patent is merely a combination of the prior arts and as such is

invalid because it is obvious to one skilled in the arts. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Kell-Dot Industries, Inc. v. Graves, 361 F.2d 25 (8th Cir. 1966); Greening Nursery Co. v. J & R Tool and Mfg. Co., 376 F.2d 738 (8th Cir. 1967); Gerner v. Moog Industries, Inc., 383 F.2d 56 (8th Cir. 1967); Skee-Trainer, Inc. v. Garelick Mfg. Co., 361 F.2d 895 (8th Cir. 1966).

There can be no infringement of an invalid patent, General Mills, Inc. v. Pillsbury Company, 378 F.2d 666 (8th Cir. 1967).

Even if the patent in suit were valid, there has been no infringement. The differences in the patent and Ralston's process are the following:

1. The starting material of the patent is substantially undenatured. Ralston has a substantially denatured product.

2. The moisture range of the patent is 50% to 80%. Ralston's product will not work above 44%.

3. The patent temperature ranges are from 300° to 400° fahrenheit. Ralston's will work at ranges below 300°.

4. The patent will work with substantial amounts of oil or fat. Ralston's will not work when fat or oil is present.

5. The patent has recovery of solids from 30% to 85%. Ralston has almost 100% recovery of solid material.

6. The equipment of the patent only works in a Votator and cannot be a continuous operation. Ralston uses an extruder and has a continuous operation.

7. The end product of the patent is a fibrous meat-like mass. Ralston's end product is a cellular puffed, spongy product.

Omission of one element of a combination covered by any claim of a patent averts infringement. Walker on Patents, Sec. 461, p. 1695; Deller's Ad-dition, 1937; Cornell v. Chase Brass & Copper Co., 142 F.2d 157 (2nd Cir. 1944); Becker v. Webcor, Inc., 289 F.2d 357 (7th Cir. 1961).

The Court finds and declares that the entire Rusoff patent is invalid because it fails to comply with 35 U.S.C. §§ 112 and 282(3). For the further reason that it is an invention which is obvious to one skilled in the prior arts. Further, there has been no infringement of the Rusoff patent by Ralston because the patent is invalid and because it is a different process.